Braxton H. ANDERSON; Frank Kenneth Basinger; Pamela E. Johnson; Patricia L. Murph; Richard B. Peterson; Shirley Sharp; Robert V. Tucker; and Ronald D. Yost, Plaintiffs, Verlin Bryant; Sharon Dover; Norma L. Fanning; Joy Harris; Josey Jarrett; Emma Johnston; Robert Lee Keaton; Kathy Nealey; Walter Nealey; Michael L. Nystrom; Elbert Payne; Ruby C. Payne; Loretta Davis Raymond & Lowie A. Herman, Intervening Plaintiffs,

v.

CIBA–GEIGY CORPORATION; Employee Benefit Plan of Ciba-Geigy Corporation; Corporate Employee Benefit Committee Ciba-Geigy Corporation; Michael Whelan; Stanley Kase; John Mullins; John O'Conner; Stanley Sherman; Robert Hochhauser; Laurie W. Lawrence; George H. Stewart; Dr. Charles E. Ziegler; William H. Ebert; and John Mincy, Defendants.

No. C83–0068A.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 26, 1984.

Defendants' motion granted; plaintiffs' motion denied.

Anthony J. McGinley, Robert O. McCloud, Jr., H. Sanders Carter, Jr., Carter, Ansley, Smith & McLendon, Atlanta, Ga., for all plaintiffs and intervening plaintiffs.

Griffin B. Bell, Jr., King & Spalding, Atlanta, Ga., Charles B. Wolf, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for all defendants.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled ERISA action is before the Court on the defendants' motion for summary judgment and the plaintiffs' motion for partial summary judgment. The parties agree that the issue of liability is one of law that can be decided on cross-motions for summary judgment.

### Statement of Facts

The plaintiffs in this action are former employees of defendant Ciba-Geigy Corporation which is incorporated in New York. Ciba-Geigy offers its employees various

benefits including severance pay. The rules relating to these benefits are set out in Ciba-Geigy's corporate Personnel Policy No. 7.1 dated June 1, 1972, and amended on March 15, 1981. This Plan, which the defendants concede is covered by ERISA, provided that Ciba-Geigy employees who were terminated for reasons other than cause would be entitled to severance pay in the amount of two weeks pay for each year or fraction of a year worked for Ciba-Geigy. Termination for reasons other than cause was defined as termination "initiated by the Company for reasons beyond the control of the employee (*e.g.*, reorganization, budgetary cutback, lack of work...." The Plan defined severance pay as "payments made to an employee when the Company terminates the employer-employee relationship unless the employee has been discharged or special contractual arrangements provide otherwise." The Plan also provided for an exception to the general provisions regarding severance pay. This exception provided that" [t]his policy shall not be applicable in any special situation (such as the relocation of a major Operating Unit) where the Corporate Management Committee deems it necessary to establish a separate policy applicable to that situation only." It is undisputed that the plaintiffs in this action were covered by these severance pay provisions.

The plaintiffs worked for the Ren Telecommunications Division which was part of the Applied Plastics Division of Ciba-Geigy. In early 1981, Ciba-Geigy executive, Jack Schneller decided to reorganize part of the Applied Plastic Division by selling the entire Ren Telecommunications Division. Schneller decided to sell this Division as an ongoing concern, including a transfer of the existing employees to the acquiring company. On July 21, 1981, Communications Technology Corporation (CTC) purchased the Ren Telecommunications Division from Ciba-Geigy. CTC specifically disclaimed any liability for claims by any former Ciba-Geigy employee which accrued prior to the sale. In addition, CTC never made any formal offer of employment to the plaintiffs. Rather, the plaintiffs reported to work on July 22, 1981, and found out that they had a new employer. Although the plaintiffs were retained by CTC at their same salaries and job positions they had at Ciba-Geigy, they claim that they lost benefits that had been provided by Ciba-Geigy, including lost vacation time and seniority status. In Count I of their complaint, the plaintiffs claim that they are entitled to severance pay under the provisions of the Plan because they are no longer working for Ciba-Geigy. In Count VI of their complaint, the plaintiffs claim that they are entitled to these benefits under the federal common law. The Ciba-Geigy executive who interpreted the Plan decided that the plaintiffs were not entitled to any severance pay because their termination was one of form not of substance and because the Plan specifically exempted "special situations" from its provisions and the sale of the Telecommunications Division constituted such a "special situation."

### Discussion

■ The plaintiffs concede that the proper standard of review for the purposes of the present motions is the arbitrary and capricious standard. Plaintiffs' Brief at 18, Fn. 1. Accordingly, this Court is bound by the decision of the Plan Administrators unless that decision was arbitrary, fraudulent, or rendered in bad faith. *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209 (7th Cir.1983). And, the Eleventh Circuit has recently stated that the Court's role "is limited to determining whether the [administrators'] interpretation was made rationally and in good faith—not whether it was right." *Griffis v. Delta Family Care Disability*, 723 F.2d 822 (11th Cir.1984).[1]

The defendants argue that the plaintiffs are not entitled to severance pay because

---

**1.** The plaintiffs seem to question whether this standard should apply to this case because the decision not to provide severance pay to the plaintiffs was allegedly not made by the plan administrators. The plaintiffs do not pursue this argument, however, and as noted above, concede that the arbitrary and capacious standard applies.

the wholesale transfer of the Ren Telecommunications Division to CTC constituted a "special situation" as defined in the Plan's guidelines and that Ciba-Geigy formulated a separate policy applicable to this special situation. In response to the plaintiffs' argument that no special policy was formulated in this case, the defendants claim that Ciba-Geigy's Executive Committee delegated the authority to interpret the Plan to Jack Schneller who, in turn, delegated the authority to Stanley Kase, Director of Human Resources for Ciba-Geigy.[2] In his deposition, Kase states that he decided that it was proper to formulate a separate policy regarding the applicability of the severance pay provisions to the sale of the Ren Telecommunications Division. Kase Deposition at 70–71; 78–79.[3] Kase decided that the employees were not entitled to severance pay because they remained at their same jobs at their same salaries. This decision can only be overturned if it was made arbitrarily or capriciously.

Another Court has previously addressed the identical issue now facing this Court. In *Rynar v. Ciba-Geigy Corp.*, 560 F.Supp. 619 (N.D.Ill.1983), another Ciba-Geigy employee sued the corporation for severance pay when his entire division was sold to another company. The severance pay provisions at issue in *Rynar* were the same ones that are in issue in the present controversy. The Court in *Rynar* held that Ciba-Geigy did not act arbitrarily or capriciously in denying severance pay to Rynar when he remained at his same job after the sale of his division. The Court summed up its holding as follows:

> The reference in Section 2.9.2 to any "special situation" suggests that further limitations upon the payment of severance benefits were within the discretion of Ciba's personnel officers. We conclude that Ciba did not abuse its authority to determine the propriety of severance pay ... where it is undisputed that Rynar accepted an equivalent position with the buyer of the division of Ciba for which he worked, and where Rynar suffered no significant economic loss as a result of the substitution of one employer for the other. *Id.* at 626.

The *Rynar* Court also addressed the argument that Ciba-Geigy's policy provisions are ambiguous and must be construed against Ciba-Geigy. The Court noted that this principle rests upon general contract law which is preempted by federal ERISA law. In fact, as the *Rynar* Court also noted, the principle that ambiguities in a contract must be interpreted against the employer is inconsistent with the arbitrary and capricious standard of review applicable to ERISA cases.

The plaintiffs attempt to distinguish *Rynar* in two ways. First, they argue that much of the deposition testimony that is before this Court was not before the Court in *Rynar*. The plaintiffs contend that this evidence shows that Ciba-Geigy did not treat the sale of the Ren Division as a "special situation" under the policy provisions and, therefore, Ciba-Geigy cannot justify its treatment of the plaintiffs by reference to that section of the Pension Plan. Secondly, the plaintiffs argue that by losing seniority status and vacation time, they did suffer significant economic loss as a result of the sale of their division.

Stanley Kase testified that he relied on the "special situation" section of the Plan when he decided not to award severance pay to the plaintiffs. Kase deposition at 70–71, 78–79. This testimony contradicts the plaintiffs' assertion that Ciba-Geigy did not treat the divestiture as a "special situation." In addition, the "special situation" provision of the Plan put the plaintiffs on notice that Ciba-Geigy had the discretion to

---

**2.** The plaintiffs argue that this delegation of authority violated ERISA. This Court finds that the plaintiffs have not met their burden of proof on this issue.

**3.** The plaintiffs argue that since Schneller stated in his deposition that he didn't feel a separate policy was necessary, the defendants did not, in fact, create a separate policy. This argument carries little weight because it was Kase who made the decisions concerning severance pay and he testified that he did feel that a separate policy was necessary in this case.

deny them severance pay in a variety of situations. This Court cannot say that the decision to deny severance pay in this particular situation, where the employees kept their same jobs at the same pay, was arbitrary or capricious.

The plaintiffs allege that, unlike the plaintiff in *Rynar*, they have suffered significant economic harm as a result of the sale of their division to CTC. The plaintiffs state that they "lost all seniority rights and all accrued protection against involuntary termination." Plaintiffs' Brief in Response to Defendants' Motion for Summary Judgment at 11. The plaintiffs do not, however, enumerate these "seniority rights" nor do they detail what "accrued protection" they had obtained against involuntary termination. In addition, the plaintiffs have not shown this Court that the plaintiff in *Rynar* did not also lose these same benefits. In any event, the degree of economic harm suffered by the plaintiffs does not address the argument that the Plan specifically provided that Ciba-Geigy could adopt a special policy for situations that warranted one and that the wholesale transfer of one division constituted such a special situation. This Court feels that the Court's analysis in *Rynar* is equally applicable to the present case.

The Seventh Circuit Court of Appeals recently dealt with almost the identical issue facing this Court and resolved it in favor of the plan administrators. *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209 (7th Cir.1983). The plaintiffs in *Sly* were two employees who worked for a division which was sold to another company. The plaintiffs continued to work for the purchaser of the division at the same jobs and equal salaries. The plan at issue provided that employees "whose services are involuntarily terminated for the convenience of the company," would receive severance

pay. *Id.* at 1212. The plaintiffs claimed that they were terminated and that they had a "vested interest in ... payment of their accrued severance benefits." *Id.* The Seventh Circuit panel cited with approval the district court's holding that the plaintiffs were not entitled to both their new jobs and their severance pay. The district court stated that:

> The denial of severance pay to employees who accepted their old positions with the purchaser was not arbitrary or capricious. Severance pay is generally intended to tide an employee over while seeking a new job and should be considered an unemployment benefit.... To award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention or goal of ... ERISA. *See Sly* at 1211.[4]

The issue before this Court is a very difficult one. In addition to the cases already discussed, there is an abundance of case law, both state and federal, dealing with the situation where one division of a company is sold *in toto* to another company and the employees of the old company demand severance pay or other benefits promised by the old company. *E.g., Livernois v. Warner-Lambert Co., Inc.*, 723 F.2d 1148 (4th Cir.1983); *Chapin v. Fairchild Camera Instrument Corp.*, 31 Cal.App.3d 192, 107 Cal.Rptr. 111, 115 (1973); *Adams v. Jersey Central Power & Light Co.*, 36 N.J.Super. 53, 114 A.2d 776 (1955); *Younger v. Thomas International Corp.*, 275 Ark. 327, 629 S.W.2d 294 (1982). Some of these cases have arisen under state contract law and some under ERISA. The state courts, which have reached the merits of these cases *de novo*, have reached conflicting results depending on the specific

**4.** The Plan in *Sly* also contained a provision whereby all "terminated" employees would be placed on a leave of absence before receiving severance pay. The plaintiffs in *Sly* were not placed on such leave and, thus, did not meet the requirements of the Plan. Although this fact does, to some extent, distinguish *Sly* from the

present case, the policy considerations that the *Sly* court relied on are equally applicable to the present controversy. It is also interesting to note that the Court in *Sly* observed that the fringe benefits that the purchaser company provided to the plaintiffs were "admittedly less than the [defendants'] benefits." *Id.* at 1212.

policies in question and the philosophy of each particular court. *Compare Chapin, supra* with *Younger, supra.* This Court, however, is not free to decide this case based on a *de novo* review of the record. Rather, the inquiry is limited to whether Ciba-Geigy's decision not to grant severance benefits to the plaintiffs was arbitrary or capricious. It is undisputed that the plaintiffs were hired by CTC at their same salaries and job positions. In light of the fact that the Plan contained a specific exception to the general provisions regarding severance pay and that there are competing equities as to the desirability of awarding severance pay in situations where the employees keep their same jobs at their same salaries, this Court cannot say that Ciba-Geigy's decision was arbitrary or capricious. Accordingly, this Court feels that the defendants' motion for summary judgment on Count I of the plaintiffs' complaint should be granted.

 The plaintiffs have alleged that they are entitled to severance pay under the federal common law of ERISA. This allegation was originally stated in Count VI of the plaintiffs' complaint and survived the defendants' motion to dismiss only to the extent that it did not allege a state cause of action. *See Order* dated September 13, 1983. The plaintiffs have not alleged any facts or theories, however, to convince this Court that Count VI states anything other than a state contract action. Since ERISA preempts state contract law, *see Lafferty v. Solar Turbines International,* 666 F.2d 408 (9th Cir.1982), the defendants are entitled to summary judgment on Count VI of the plaintiffs' complaint.

In sum, this Court holds that the defendants did not act arbitrarily or capriciously in denying severance pay to the plaintiffs. Accordingly, the defendants' motion for summary judgment as to all issues is hereby GRANTED. The plaintiffs' motion for summary judgment is hereby DENIED.

This order resolves all of the issues in this case.