James T. WILLIAMS,
Plaintiff–Appellant,

v.

Fred P. WRIGHT, Jr., Individually and as liquidating trustee of Wright Pest Control Co. of South Carolina, Inc., Defendants–Appellees.

No. 89–8837.

United States Court of Appeals,
Eleventh Circuit.

April 11, 1991.

Richard E. Miley, Nixon, Yow, Waller & Capers, Augusta, Ga., for plaintiff-appellant.

Ellen L. Beard, Kerry L. Adams, U.S. Dept. of Labor, Washington, D.C., for amicus curiae Dept. of Labor.

J. Arthur Davison, Augusta, Ga., for defendants-appellees.

Before HATCHETT and ANDERSON, Circuit Judges and GODBOLD, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This appeal raises issues involving the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, and state contract law. Appellant James T. Williams ("Williams") brought an action under § 502 of ERISA, 29 U.S.C. § 1132,[1] against appellees Fred P. Wright ("Wright")[2] and Wright Pest Control Co. ("WPCC"), alleging violations of ERISA. Williams also included a state law claim for breach of a retirement contract. The district court eventually granted summary judgment in favor of appellees on all counts. With regard to the ERISA claim, the district court reasoned that the retirement benefits provided to Williams by WPCC did not constitute a "plan, fund, or program" within the meaning of Sections 3(1) or 3(2)(A) of ERISA, 29 U.S.C. §§ 1002(1) or (2)(A). We hold that some of the retirement benefits extended to Williams do fall within ERISA's definition of a "plan, fund or program," and we therefore reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

The district court also granted summary judgment in favor of appellees on the state law contract claims, invoking an array of state law doctrines. We affirm the district court's grant of summary judgment with respect to appellant's state law contract claims to the extent that these claims are preempted by the federal ERISA legislation. However, we reverse and remand with regard to appellant's state law contract claims for the benefits not covered by ERISA.

## I. FACTS

James T. Williams began working for WPCC in 1947. In October of 1981, Williams and Fred P. Wright, Jr., president of WPCC, discussed the possibility and terms of Williams' retirement. Although

---

1. 29 U.S.C. § 1132(a) provides, in pertinent part:
   (a) Persons empowered to bring a civil action
   A civil action may be brought—
   (1) by a participant or beneficiary— ...
   (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....

2. The district court dismissed Wright as a party defendant. Appellant challenges this ruling on appeal.

these talks were inconclusive, on October 23, 1981, Wright presented to Williams the letter set out in the margin (the "1981 letter").[3]

Williams received benefits in accordance with this letter until September, 1984. On September 7, 1984, "Wright informed [Williams] that for business reasons it would be necessary 'to slow the gravy train down from a race to a crawl.' " R1–24–3. Subsequently, WPCC reduced the country club, telephone, and automobile expenses, but continued the monthly payments of $500.00 and the insurance benefits.

On September 1, 1985, Wright informed Williams that WPCC's dissolution and imminent asset sale to Terminex Service, Inc. necessitated termination of Williams' retirement benefits. Accordingly, after the asset sale and dissolution occurred, in December, 1985, WPCC terminated Williams' benefits. Wright did transfer title to the company car that Williams had been using to Williams and forgive $1,906.63 in person-

---

**3.** The letter reads as follows:

October 23, 1981

Mr. James T. Williams
Hand Delivery
Augusta, Georgia
PERSONAL & CONFIDENTIAL
Dear Jim:

This letter is to formalize our earlier conversations regarding your compensation as General Manager of Wright Pest Control as of January 1, 1982 and your duties thereafter.

After consultation with attorneys and accountants, I have arrived at the following plan, which will provide for an uninterrupted continuation of cash as you gradually alter your work schedule to a retirement status.

Your current net pay is $1200.00 per month, plus or minus $50.00. I understand that you have applied for social security benefits beginning January 1, 1982, and that these benefits will net you approximately $700.00 per month.

As of January 1, 1982, you are permitted to earn up to $6000.00 per year without any effect on your social security benefits. The company will issue you a check in the amount of $500.00 each month, on the first of each month. This amount will completely take care of your allowed earned income under social security regulations.

The total of your social security benefits, plus this monthly amount should equal the $1200.00 target amount, plus or minus $50.00. In addition, we will also:

Pay all dues and fees at the Augusta Country Club, including meal tickets when appropriate receipts are executed.

Furnish you with a vehicle, equal or better than that which has been furnished you in the past. All expenses are to be paid, including gasoline. A radio will also be furnished for communication with the company. The vehicle is to be returned to the company should you ever become unable to drive.

Pay all premiums for yourself and Mrs. Williams on the company's group medical insurance plan, and the maximum available term life insurance available through the plan for your age group.

These benefits will continue until your death or when you have no use for them. It is understood that your country club membership will be made available to me personally when you no longer have use for it.

In exchange for these payments and benefits, you will be expected to function for the company in the manner of consultant and advisor on pest control matters, and various activities of a social nature related to sales activity or general public relations. You will not have any operational authority or duties except in a life or death situation, such as when observing an unsafe act by a company employee.

Your office and desk will be maintained as per your wishes, until an acute need for space in the office should dictate otherwise. Your desk will be kept locked, but for security reasons we ask that all company documents of a confidential or sensitive nature be destroyed. This will include any past profit and loss statements, personnel records, etc. In a like manner we can not be responsible for any personal items of a confidential or sensitive nature.

As this program is as we agreed, but in fact may not fill all needs as anticipated, future revisions are to be expected, but no changes will be considered until a sufficient amount of time has passed. April 1, 1982 will be the earliest date that revisions will be considered.

Jim, I trust that this is exactly as you perceived the program to be from our conversations. Should you have any questions or revisions, we need to discuss them right away. Jim, in all my working years I have never known a more dedicated employee than yourself. I trust that this loyalty will continue, and that I and the company can continue to call on your vast experience and knowledge of pest control.

In addition, I would like to also request that you begin the duties listed above as of Monday, October 26. Bob and I have everything in control, and I think for once you deserve a full and complete holiday season without any company worries.

Please feel free to come to the office and visit or work on company or personal business at any time, and to use the office staff for your correspondence.

Sincerely,
Fred P. Wright, Jr., President

al debt owed to WPCC by Williams. This lawsuit followed.

## II. DISCUSSION

### A. *The ERISA Claim*

Congress enacted ERISA in 1974 to provide federal standards for the establishment and maintenance of employee pension and benefit plans. The legislation attempts to strike a balance between protecting employees and encouraging employers to voluntarily establish pension and benefit plans. *See* H.R.Rep. No. 98–807, 93d Cong., 2d Sess., *reprinted in*, 1974 U.S. Code Cong. & Admin.News 4639, 4670, 4678. An employer's decision to establish a plan is entirely voluntary, but once a plan is established, Congress wanted to "mak[e] sure that if a worker has been promised a defined pension benefit upon retirement— and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375, 100 S.Ct. 1723, 1733, 64 L.Ed.2d 354 (1980).

ERISA recognizes two types of plans, "employee welfare benefit plans" [4] and "employee pension benefit plans." [5] In order for appellant to invoke ERISA's sub-stantive provisions covering either type, appellant must prevail on the threshold question of whether the benefits arrangement set out in the 1981 letter is a "plan, fund, or program" covered by ERISA.[6] *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (en banc); 29 U.S.C. §§ 1002(1) and (2)(A). Although the definition of these terms has proved to be elusive at best, *Donovan* at 1372, this court has prescribed general guidelines for resolving the threshold question: "[A] 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits,[7] a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373. *Donovan* suggests a flexible analysis consistent with the legislative approach to ERISA. *See* S.Rep. No. 93–127 (1973), *reprinted in*, 1974 U.S.Code Cong. & Admin.News 4639, 4854 ("It is intended that coverage under [ERISA] be construed liberally to provide the maximum degree of protection to working men and women covered by private retirement programs."); *Smith v. CMTA– IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984).

The district court applied the *Donovan* analysis and concluded that the retirement

---

**4.** 29 U.S.C. § 1002(1) provides:

The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

**5.** 29 U.S.C. § 1002(2)(A) provides:

Except as provided in subparagraph (B), the terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore ·or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

**6.** Although the label applied by the parties is not determinative, we note that Wright's letter of October 23, 1981, describes its provisions for retirement benefits as a "plan."

**7.** With regard to this first prong of *Donovan*, we can easily ascertain the benefits intended by Wright's October 23, 1981 letter. The promise of monthly payments of $500.00 and group health and life insurance coverage is certainly not ambiguous.

arrangement at issue was not covered by ERISA. The district court was troubled by the fact that the only ascertainable source of financing for Williams' benefits was the general assets of the corporation rather than any separate fund or trust, that the class of beneficiaries was limited to Williams and his wife, and that, in the court's view, there were no procedures for receiving benefits. The district court also viewed the arrangement as, at best, "an individual employment contract which included post-retirement compensation" rather than an ERISA "plan, fund, or program." *Williams v. Wright,* No. CV188–058, at 12 (S.D.Ga. Dec. 8, 1988) (order granting summary judgment on the ERISA claim). After carefully reviewing the district court's opinion and the arguments of the parties, including the *amicus curiae* brief filed by the Department of Labor, we conclude that the district court erred in holding that the letter from Wright to Williams did not establish a plan covered by ERISA.

### 1. The *Donovan* Analysis

#### a. *Source of Financing*

■ Although noting that the source of financing for the benefits at issue was the general assets of WPCC, the district court found no ascertainable source of financing under *Donovan.* Although, with some exceptions, it is true that the assets of employee benefit plans are required to be held in trust, *see* 29 U.S.C. § 1103, it is equally true that an employer's failure to meet an ERISA requirement does not exempt the plan from ERISA coverage. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985). "[A]n employer ... should not be able to evade the requirements of the statute merely by paying ... benefits out of general assets." *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 18, 107 S.Ct. 2211, 2221, 96 L.Ed.2d 1 (1987). Therefore, we conclude that the payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage. *See also* U.S. Dept. of Labor Opinion Letters 78–18 (Sept. 20, 1978) and 79–75 (Oct. 29, 1979)

(finding ERISA coverage where benefit payments were made from general assets of employer and other requirements satisfied).

#### b. *Procedures for Receiving Benefits*

■ Relying in part on *Fort Halifax, supra,* the district court held that the instant case lacked the administrative program or procedures characteristic of ERISA plans. However, *Fort Halifax* does not support the conclusion that the retirement arrangement at issue is not covered by ERISA for this reason. Although the procedures for receiving benefits provided by the 1981 letter are simple, they are sufficiently ascertainable under the *Donovan* analysis.

In *Fort Halifax,* after the employer closed its poultry packaging and processing plant, the state of Maine sued to enforce a state statute requiring the employer to provide a one-time severance payment to certain employees. The employer argued, *inter alia,* that the state statute was preempted by ERISA and therefore unenforceable. The Supreme Court held that ERISA was inapplicable because a one-time payment did not require the sort of ongoing administrative scheme characteristic of an ERISA plan. The Court reasoned that a purpose of ERISA preemption, "to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations," *Fort Halifax* at 11, 107 S.Ct. at 2217, was not compromised where "[t]he employer assumes no responsibility to pay benefits on a regular basis." *Id.* at 12, 107 S.Ct. at 2218. The Court concluded that "[t]he theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits." *Id.*

The situation in *Fort Halifax* is easily distinguishable from the instant case which does involve a continuing obligation necessitating ongoing, though simple, procedures. The letter of October 23, 1981 expressly provides that the company "will issue you a check ... each month ... until your death or when you have no use for

[the benefits]." In addition the letter provides that in the event that the arrangement does not "fill all needs as anticipated," revisions will be considered after April 1, 1982. Therefore, we conclude that the 1981 letter provides for sufficiently ascertainable procedures for receiving benefits under *Donovan.*

### c. *The Class of Beneficiaries*

■ The requirement of an ascertainable class of beneficiaries is perhaps more troublesome. However, we do not interpret *Donovan*'s use of the word "class" as an absolute requirement of more than one beneficiary or that a plan tailored to the needs of a single employee can not be within ERISA. Rather, *Donovan* referred only to the fact that most pension plans falling within ERISA involve identical treatment of a group of employees.

Furthermore, we find nothing in the ERISA legislation pointing to the exclusion of plans covering only a single employee. In fact, ERISA's predecessor statute, the Welfare and Pension Plans Disclosure Act, Pub.L. No. 85–836, § 4(b)(4), 72 Stat. 998–999 (1958), expressly excluded plans covering less than 25 employees. Congress was aware of this limitation in the prior legislation but apparently decided not to include it in ERISA. *See* S.Rep. No. 127, 93d Cong., 1st Sess., at 6 (1973).

It is also significant that Department of Labor regulations refer to a plan covering *one* or more employees as within ERISA. *See, e.g.,* 29 C.F.R. § 2510.3–3(b) (1988) ("[A] Keogh plan under which *one or more* common law employees, in addition to the self-employed individuals, are participants covered under the plan, will be covered under Title I [of ERISA].") (emphasis added). *See also* 29 C.F.R. § 2510.3–2(d) (under some circumstances, individual retirement accounts or annuities are covered by ERISA).

Finally, a number of opinion letters issued by the Department of Labor confirm that a plan that otherwise qualifies for ERISA coverage will not be excluded because it covers only a single employee. *See, e.g.,* Opinion Letter 75–09 (June 24, 1975); Opinion Letter 79–75 (Oct. 19, 1979); Information Letter to Mr. Joel P. Bennett (Oct. 22, 1985). The October 22, 1985 letter expressly states that ERISA coverage is *"not affected by the fact that the arrangement is limited to covering a single employee,* is negotiated between the employer and the employee, or is not intended by the employer-plan sponsor to be an employee benefit plan for purposes of [ERISA] coverage."* (emphasis added). Although these opinion letters are not binding in this court, the views of the agency entrusted with interpreting and enforcing the ERISA statute carry considerable weight. *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.,* 848 F.2d 1164, 1167–68 (11th Cir.1988) (en banc). Therefore, we conclude [8] that a plan covering only a single employee, where all other requirements are met, is covered by ERISA.[9]

### 2. The Employment Contract Cases

■ Aside from the *Donovan* analysis, further support for our conclusion that the 1981 letter establishes an ERISA plan or program is found in the cases that appellee cites for the opposite conclusion. For example, in *Jervis v. Elerding,* 504 F.Supp. 606 (C.D.Cal.1980), an owner of apartment buildings, Elerding, entered into an employment contract with his apartment manager, Jervis, agreeing to provide Jervis with an apartment upon her retirement or termination after at least ten years in his employ. After Jervis terminated her employment, Elerding refused to provide the apartment as agreed. The court held that "a contract between an employer and an individual employee providing for post-retirement or post-termination in-kind compensation is not a 'plan, fund, or program'

---

**8.** Our holding in this regard answers the question left open by *McQueen v. Salida Coca–Cola Bottling Co.,* 652 F.Supp. 1471, 1472 (D.Colo. 1987), a case cited by appellee. In *McQueen,* the court specifically declined to hold that a plan covering a single employee could not be within the scope of ERISA.

**9.** In any event, the insurance benefits apparently were available to a class of beneficiaries.

within the definitional framework of ERISA." *Id.* at 608. The court based this holding on its observation that the agreement to provide the apartment "was part of the present compensation arrangement, inserted as consideration for plaintiff's continued services to defendant, *rather than as part of a 'plan' providing for retirement income or deferral of income." Id.* at 609 (emphasis added). Also, the court noted that the employer's promise of a rent-free apartment was not conditioned on the employee's retirement and that "the parties merely memorialized their employee-employer relationship; they did not enter into an agreement for a *separate and specific retirement plan." Id.* (emphasis added).

Similarly, other cases cited by appellee and relied on by the district court generally involve the promise of post-retirement payments offered only incidentally to a *present* individual employment agreement. *See, e.g., McQueen v. Salida Coca–Cola Bottling Co.,* 652 F.Supp. 1471 (D.Colo. 1987); *Lackey v. Whitehall Corp.,* 704 F.Supp. 201 (D.Kan.1988), *amended on other grounds,* Civ.A. No. 85–2639–S (D.Kan. Feb. 23, 1989) (1989 Westlaw 2100-8); *O'Hollaren v. Marine Cooks & Stewards Union,* 83 Or.App. 133, 730 P.2d 616 (1986). *See also Fraver v. North Carolina Farm Bur. Mut. Ins. Co.,* 801 F.2d 675 (4th Cir.), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1375, 94 L.Ed.2d 690 (1986). *See generally,* Goodman & Stone, *Exempt Compensa-tion Arrangements Under ERISA,* 28 Cath.U.L.Rev. 445, 452–53 (1979).[10]

The distinction between payments after retirement or termination pursuant to a current employment contract and a plan to specifically provide for an employee's retirement was perhaps made most clearly in *Murphy v. Inexco Oil Co.,* 611 F.2d 570 (5th Cir.1980).[11] In *Murphy,* Murphy, the president of Inexco, was one of a number of employees given a bonus in the form of royalties from the company's drilling projects. Murphy eventually sued the company, alleging various violations of ERISA. The court did not address the substantive ERISA violations because it concluded that the bonus program was not a pension plan covered by ERISA. The court based this holding on the specific language of the definitional statute, 29 U.S.C. § 1002(2), and its interpretation of a regulation, 29 C.F.R. § 2510.3–2(c) (1979).[12]

Although that particular regulation is not applicable here, the crucial distinction made by the *Murphy* court is entirely relevant. The court's rationale for excluding the bonus program from ERISA was expressed in the following language: "[The bonus program] was evidently designed to provide *current* rather than *retirement* income to Inexco's employees." *Murphy,* 611 F.2d at 575–76 (emphasis added). The court interpreted "[t]he words 'provides retirement income' [in 29 U.S.C. § 1002(2)(A)(i) as referring] only to plans *designed for the purpose of paying retirement income* whether as a result of their

**10.** We note that, under 29 U.S.C. § 1002(2)(A)(ii), an arrangement also meets the ERISA definition of a "plan, fund, or program" if it "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond...." It is possible that the facts of some of the cited cases would meet this definition. However, we need not address whether any of these cases were wrongly decided because, as discussed in text, we conclude that the monetary payments to Williams fall under the definition in 29 U.S.C. § 1002(2)(A)(i), *i.e.,* are primarily retirement income and not deferred compensation from current employment.

Furthermore, to the extent that any of the cases cited in this section of this opinion, *e.g., O'Hollaren,* 83 Or.App. at 136–37, 730 P.2d at 618–19, hold that ERISA can never apply to a plan that covers only one employee, we respectfully disagree. *See* section A.1.c., *supra.*

**11.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**12.** 29 C.F.R. § 2510.3–2(c) provides, in its substantially· unchanged current form:

*Bonus program.* For purposes of Title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.

express terms or surrounding circumstances." *Id.* at 575 (emphasis added).[13] The *Murphy* analysis would not include within ERISA payments that incidentally might be made after retirement but were not designed for retirement purposes. *Id.* at 574–75.

We believe that the *Murphy* analysis is a fair reading of the definition of an "employee pension benefit plan" contained in 29 U.S.C. § 1002(2)(A). Although that term is "defined only tautologically in the statute," *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987), the *Murphy* court's approach was correct because the plain language of the statute is that a plan is covered by ERISA "to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program— ... provides retirement income to employees...." 29 U.S.C. § 1002(2)(A). Therefore, our analysis of the arrangement at issue in the instant case will focus on whether it was designed primarily for the purpose of providing retirement income or whether the 1981 letter contemplated the payment of post-retirement income only incidentally to a contract for current employment.[14]

The facts of this case reveal that the letter presented to Williams by Wright on October 23, 1981 contemplated Williams immediate retirement. We initially note that the letter itself expressly changed Williams' status at WPCC as of October 26, 1981, just three days after the date of the letter. Furthermore, although the letter states that "[i]n exchange for these payments and benefits, you will be expected to function for the company in the manner of consultant and advisor on pest control matters ...," the record shows that Williams performed only minimal, if any, consulting services after October 26, 1981. Deposition of James T. Williams at 23–24 (Nov. 8, 1988). In fact, Wright stated that he typed and presented the letter to Williams specifically for the purpose of procuring Williams' retirement, or, as Wright put it, Williams' termination. Deposition of Fred P. Wright at 26–27 (Oct. 18, 1988). In addition, in a letter dated April 3, 1987, Wright stated that "[t]he money paid by Wright Pest Control to James Williams was retirement pay and not salary." R1–15 Exhibit C. Finally, in defense of appellant's contract claims, appellees stated in the joint proposed pretrial order that the letter was "a gratuitous promise to pay retirement income...." R2–37–9.

Therefore, it is clear that the 1981 letter's arrangement primarily constituted payment of retirement income and was not an employment contract outside the scope of ERISA.[15]

**13.** The court also found that the program did not "result[ ] in a deferral of income" under 29 U.S.C. § 1002(2)(A)(ii).

**14.** Although the responsibility for resolving this factual question would usually rest with the district court, the posture of this case requires that we resolve this issue. The summary judgment granted by the district court rested not on a finding that there was no issue of material fact, but rather on a legal conclusion that the retirement arrangement did not implicate ERISA. Appellees do not argue on appeal that there are genuine issues of fact with respect to this issue. Thus, in determining that the district court erred in applying the law to the undisputed facts, we necessarily determine that the plan here is covered by ERISA. Moreover, there were cross-motions for summary judgment in the district court, with Williams also moving for partial summary judgment on the ERISA issue.

**15.** The Department of Labor opinion letters cited by appellee also fail to persuade us that the 1981 letter is an employment contract outside

the scope of ERISA. U.S. Dept. of Labor Opinion Letter 76–110 (Sept. 28, 1976) is distinguishable from the instant case because it appears that the payments made there were primarily related to the buy-out of a company for which the payee was an employee and 50 percent stockholder. The primary purpose of the payments was not to provide retirement income. *Cf. Fraver,* 801 F.2d at 677–78 (no ERISA coverage where arrangement was more like buy-out than pension and benefits were not conditional on retirement). U.S. Dept. of Labor Letter 76–79 (May 25, 1976), although admittedly somewhat more supportive of appellee's position, contains such incomplete facts that we are unable to use it as the sole authority to hold that the 1981 letter is not covered by ERISA. We also note that the Department of Labor's *amicus* brief disavows Opinion Letter 76–79 as authority for appellee's position. *See* Brief of the Department of Labor at 19.

**3. 29 C.F.R. § 2510.3-2(e)**

Appellee's characterization of the benefits as the gratuitous payment of retirement income is also significant in light of a Department of Labor regulation, 29 C.F.R. § 2510.3-2(e) (1988). § 2510.3-2(e) provides:

> *Gratuitous payments to pre-Act retirees.* For purposes of Title I of the Act and this chapter the terms "employee pension benefit plan" and "pension plan" shall not include voluntary, gratuitous payments by an employer to former employees who separated from the service of the employer if:
>
> (1) Payments are made out of the general assets of the employer,
>
> (2) Former employees separated from the service of the employer prior to September 2, 1974,
>
> (3) Payments made to such employees commenced prior to September 2, 1974, and
>
> (4) Each former employee receiving such payments is notified annually that the payments are gratuitous and do not constitute a pension plan.

The regulation's exclusion of gratuitous retirement benefits from ERISA strongly implies that ERISA does include payments that are not within the exclusion.[16] In fact, the Department of Labor adopted this position in their Opinion Letter 76-66 (June 2, 1976):

> If bonuses, individual retirement accounts and gratuitous payments to retirees meet the applicable requirements of section 2510.3-2(c), (d), and (e) respectively of the regulation, they will not constitute either welfare plans or pension plans within the meaning of sections 3(1) or 3(2) of the [sic] ERISA and will not be covered under Title I. *However, if they do not meet these requirements, they will constitute pensions plans within the meaning of section 3(2).*

(emphasis added).

This interpretation is also supported by U.S. Dept. of Labor Opinion Letter 78-18A

(Sept. 20, 1978). The facts involved in that opinion letter are similar to the instant case. A company with no pension plan made payments out of its general assets to several retired employees "in appreciation for past service and to ease financial hardship." *Id.* In some cases, these payments were made with the understanding that the recipient would be available as a consultant to the company. *Id.*

The company's lawyers sought a letter ruling from the Department of Labor that this arrangement was exempt from ERISA. The department responded that because the arrangement did not meet the requirements of § 2510.3-2(e), it was "unable to assure [the company] that the payments ... [would] not be regarded as a pension plan under Title I of ERISA." *Id. See also* Goodman & Stone, *Exempt Compensation Arrangements Under ERISA,* 28 Cath U.L.Rev. 445, 458 (1979) ("If an exception is needed to exempt gratuitous payments from ERISA coverage, then payment arrangements falling outside the exemption may fall inside ERISA coverage.... One would conclude ... that a gratuitous payment arrangement would be an employee benefit plan in almost all instances, since such an arrangement provides the types of payments specifically contemplated by section 3(2) of ERISA [29 U.S.C. § 1002(2)(A)], *i.e.,* 'retirement income.' ").

**4. Conclusion**

Although ERISA does not mandate the establishment of employee benefit plans, a primary purpose of the legislation is to protect employees once a plan is established and certain other requirements are met. In light of this purpose, we conclude that the district court erred in ruling that the 1981 letter did not establish a "plan" or "program" within ERISA. Accordingly, we reverse and remand to the district court for further proceedings consistent with this

---

**16.** There is no contention that the benefits arrangement here is excluded from ERISA by this regulation.

opinion.[17] The application of ERISA's substantive provisions (including exemptions) beyond the threshold question was neither addressed by the district court nor adequately briefed on appeal. Therefore, on remand, the district court will apply these provisions in the first instance.[18]

### B. *The State Law Contract Claims*

#### 1. The ERISA Benefits

■ With regard to the monetary payments and the insurance benefits, our holding that these benefits are covered by ERISA also resolves appellant's state law contract claims. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[19] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983). The Supreme Court has broadly interpreted § 1144 to encompass any state law that has a "connection with or reference to" an employee benefit plan. *Id.* at 97, 103 S.Ct. at 2900. "Thus, ERISA preempts all state laws insofar as they apply to employee benefit plans even if those laws do not expressly concern employee benefit plans and amount only to indirect regulation of such plans." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir.1987) (citing *Shaw*, 463 U.S. at 98, 103 S.Ct. at 2900). "Furthermore, ERISA preempts all such

laws regardless of whether they conflict with any specific provision of ERISA." *Id.* In *Howard*, the plaintiff sought compensation for the termination of health care benefits under an ERISA plan. In addition to his ERISA claims, the plaintiff asserted a claim for intentional infliction of emotional distress for the defendants' bad faith refusal to pay benefits, and alleged a conspiracy. The court held that "[a]lthough the state law causes of action on which Howard relies do not exclusively concern the regulation of employee benefit plans, their use here 'relates to' an employee benefit plan regulated by ERISA, thus Howard's state law claims are preempted." *Id.* at 1564. *See also Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989).

In *Amos v. Blue Cross–Blue Shield of Alabama*, 868 F.2d 430, 431 (11th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 158, 107 L.Ed.2d 116 (1989), we went further and held that state law claims relating to an ERISA plan are completely barred. *See also Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631 (9th Cir.1990) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987)) ("The Supreme Court has concluded that this provision preempts state law claims brought in conjunction with an ERISA civil enforcement suit...").

With regard to state law breach of contract claims specifically, this court and oth-

---

**17.** The letter at issue also provides for certain life and health insurance benefits which we conclude are entitled to ERISA coverage under Section 3(1) of ERISA, 29 U.S.C. § 1002(1). As discussed in text, the 1981 letter satisfies the *Donovan* analysis, *i.e.*, provides for a "plan, fund or program" within the meaning of ERISA. Section 3(1) expressly lists medical and life insurance benefits of the kind described in the 1981 letter as within ERISA coverage.

However, appellant Williams concedes that some benefits described in the 1981 letter, the country club dues and the use of a vehicle, are not among those types of benefits covered by ERISA. Therefore, Williams' claim must rest on state law with regard to these non-ERISA benefits. *See* section B.2., *infra*.

**18.** In light of our holding that ERISA applies in the instant case, we also reverse the district court's order dismissing Wright individually as a defendant. The district court should consider

in the first instance whether Wright is a proper defendant with regard to the ERISA claim.

**19.** 29 U.S.C. § 1144(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

Section 1144 also contains several exceptions not applicable here. These exceptions to ERISA preemption include "(1) causes of action that accrued prior to January 1, 1975; (2) state insurance, banking, and securities laws; (3) state criminal law; and (4) state domestic relations law. 28 [sic] U.S.C. § 1144(b)." *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1563 (11th Cir. 1987).

ers have unanimously held that such claims are preempted by ERISA. *See, e.g., Jackson v. Martin Marrieta Corp.*, 805 F.2d 1498, 1498 & n. 1 (11th Cir.1986) (state law claim for breach of contract preempted); *Straub v. Western Union Tel. Co.*, 851 F.2d 1262 (10th Cir.1988) (same); *Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) (same); *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659 (4th Cir.1986) (same); *Anderson v. Ciba–Geigy Corp.*, 608 F.Supp. 668, 672 (N.D.Ga.1984), *aff'd*, 759 F.2d 1518 (11th Cir.), *cert. denied*, 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985) (citing *Lafferty v. Solar Turbines Inter., Inc.*, 666 F.2d 408 (9th Cir.1982)) ("ERISA preempts state contract law ....").

In light of our holding that the monetary and insurance benefits afforded to Williams are covered by ERISA, we conclude that appellant's state law contract claims are preempted with regard to these benefits. We affirm the district court's grant of summary judgment on these claims, although the basis of our ruling differs from that relied on by the district court.

### 2. The Non–ERISA Benefits

■■■ Unlike the monetary payments and the insurance benefits, the country club and vehicle use benefits are not covered by ERISA. *See* 29 U.S.C. §§ 1002(1) and (2)(A). Uncovered benefits are not preempted by ERISA. *See International Ass'n of Machinists by McCadden v. General Electric Co.*, 713 F.Supp. 547, 557 (N.D.N.Y.1989) (citing *Shaw*, 463 U.S. at 97 n. 17, 103 S.Ct. at 2900 n. 17). Therefore, state law is applicable to these benefits.

The district court granted summary judgment to WPCC, concluding that the

1981 letter failed contractually because it was unenforceably vague. The district court reasoned that the following language rendered the agreement unenforceable:

> As this program is as we agreed, but in fact may not fill all needs as anticipated, future revisions are to be expected, but no changes will be considered until a sufficient amount of time has passed. April 1, 1982 will be the earliest date that revisions will be considered.

The district court interpreted this language to suggest "that defendant reserved the right to unilaterally determine the extent of its obligations to plaintiff after April 1, 1982." *Williams v. Wright*, No. CV188–058 (S.D.Ga. Oct. 2, 1989) (order granting summary judgment on state law claims).

We conclude that this determination was inappropriately made at the summary judgment stage. There is a disputed issue of fact with regard to the proper construction of the provision quoted above. One reasonable inference from the language is that Williams could request increased benefits after April 1, 1982, but that WPCC would not necessarily have to grant the request.[20] At the very least, the provision is sufficiently ambiguous to require the admission of extrinsic evidence of intent in accordance with Georgia law. *See* O.C.G.A. § 24–6–3 (1982); *Andrews v. Skinner*, 158 Ga.App. 229, 279 S.E.2d 523 (1981). The contract provision may be ambiguous, but it does not render the entire 1981 letter unenforceably vague. Therefore, we conclude that the district court erred by granting summary judgment based on its interpretation of the 1981 letter.[21]

Appellee also argues that the 1981 letter must fail as a contract because it was no more than a gratuitous promise unsupported by consideration. To support this

**20.** In fact, the provision at issue may not be applicable at all to the country club and vehicle use benefits. The 1981 letter provides that "all [country club] dues and fees" and "all expenses" in connection with the vehicle will be paid. Therefore, the provision regarding changed needs may apply only to the monetary payments and insurance benefits, which we have held are subject to ERISA. The district court should consider this after full development of the facts.

**21.** We also reject appellee's contention that the district court ruled that Williams had no reasonable basis to believe that the benefits would extend beyond the life of WPCC. The district court's vagueness ruling was based only on its belief that WPCC was free to unilaterally alter the benefits. That interpretation of the 1981 letter was prematurely made at the summary judgment stage.

argument, appellee cites *Webb v. Warren Co.*, 113 Ga.App. 850, 149 S.E.2d 867 (1966). In *Webb*, the employer essentially forced the employee to retire but awarded a retirement income "in consideration of his past relationship with the company." *Id.*, 149 S.E.2d at 869. The court held that the retirement pay was a mere gratuity, reasoning that the employer could have simply discharged the employee without incurring liability. In the instant case, however, it is possible that consideration was present in the form of a duty of loyalty and an obligation to be available to provide consulting services on the part of Williams, facts that were not present in *Webb*.[22] These factual issues were not addressed by the district court, and we therefore decline to address them here, preferring that they be addressed in the first instance by the district court.

Finally, appellee argues that the 1981 letter represented only an agreement for employment terminable at will and therefore appellee properly terminated Williams' benefits. Appellee relies on the doctrine announced in *Georgia Power v. Busbin*, 242 Ga. 612, 250 S.E.2d 442 (1978), to support this argument. However, the *Georgia Power* case based its holding on *Land v. Delta Air Lines, Inc.*, 130 Ga.App. 231, 203 S.E.2d 316 (1973), which held only that terms such as "permanent employment," "employment for life," and "employment until retirement" denote employment terminable at will *in the absence of a controlling contract.* In other words, it is clear that the *Georgia Power* doctrine is applicable only in the absence of a written contract of employment. *Jacobs v. Georgia–Pacific Corp.*, 172 Ga.App. 319, 323 S.E.2d 238, 239 (1984).[23]

Therefore, with regard to the non-ERISA benefits—the country club dues and the use of a company vehicle—we reverse the district court's grant of summary judgment and we remand for further proceedings consistent with this opinion.[24]

REVERSED in part, AFFIRMED in part, and REMANDED.[25]

---

**22.** In section A.2. of this opinion, we concluded that the primary purpose of the 1981 letter was to provide retirement benefits to Williams. This conclusion, and the analysis in section A.3., rested in part on an acceptance of appellees' characterization of the benefits as the "gratuitous promise to pay retirement income...." Our current conclusion that Williams' promise of loyalty and availability to provide consulting services may constitute sufficient consideration is not inconsistent. Although the *primary* purpose of the 1981 letter was to provide retirement benefits, it does not follow that adequate consideration is not present. Moreover, "[a] contract may be supported by adequate consideration as against a promisor under it who never receives any part of the consideration." *Fine v. Haas,* 120 Ga.App. 524, 171 S.E.2d 372, 373 (1969).

**23.** Earlier in this opinion, we concluded that the 1981 letter provides for retirement benefits rather than employment. However, we need not decide whether the *Georgia Power* doctrine is also inapplicable for this reason because it is clear that that doctrine does not apply to written agreements such as the 1981 letter.

**24.** We vacate the district court's decision to dismiss Wright as an individual defendant with respect to these state law contract claims. The district court based its decision, in part, on its belief that "[i]n Georgia, claimants against a corporation do not proceed against an individual or liquidating trustee but, rather, proceed directly against the corporation in its corporate name." *Williams v. Wright,* No. CV188–058 at 13–14 (S.D.Ga. Jan. 10, 1989). The district court relied on O.C.G.A. § 14–2–293 in making this ruling. However, § 14–2–293 has been replaced by the substantially more detailed O.C.G.A. § 14–2–1407 (1989). On remand, the district court should consider whether Wright is a proper defendant with respect to these state law contract claims after taking into account any arguments of the parties and the impact of § 14–2–1407. We have already concluded that the district court should reconsider whether Wright is a proper defendant with respect to the ERISA claims. *See supra* note 18.

**25.** Appellant's request for attorney's fees incurred on appeal is denied. The factors articulated in *Nachwalter v. Christie,* 805 F.2d 956, 961–62 (11th Cir.1986), suggest that fees on appeal are not warranted. We see no indication that appellees' positions on appeal were taken in bad faith, or that deterrence of similar conduct would be appropriate. Williams' position seeks to benefit only himself, not other beneficiaries. Finally, the appeal involved close questions of law.