Lawrence **LIPSCOMB**, Plaintiff,

v.

**TRANSAC, INC.**, Defendant.

No. C.A. 89–227–2–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

Oct. 30, 1990.

Janet E. Hill, Kenneth A. Tapscott, Nelson & Hill, Athens, Ga., for plaintiff.

W. Melvin Haas, III, Jeffery L. Thompson, Haynsworth, Baldwin, Johnson & Harper, Macon, Ga., Paul T. Ryan, Haynsworth, Baldwin, Johnson, Greaves & Edwards, Greenville, S.C., for defendant.

## ORDER

OWENS, Chief Judge.

Plaintiff filed the present suit seeking relief under ERISA, 29 U.S.C. §§ 1104(a), 1105(a), and 1024(a). Defendant moves this court to grant summary judgment against plaintiff on the ERISA claims. Also before the court are defendant's motions to dismiss plaintiff's state law claims and to

strike plaintiff's demand for a jury trial. Plaintiff has filed a motion to stay in response to defendant's motions. After careful consideration of the memoranda submitted by counsel and the record as a whole, the court makes the following findings of undisputed material facts and conclusions of law.

### Undisputed Material Facts

In March of 1987, plaintiff was hired to serve as superintendent to Bonar Industries, Inc.'s ("Bonar") Macon, Georgia facility. Plaintiff subsequently passed Bonar's performance review and was, therefore, extended coverage under Bonar's benefits package which included medical and dental insurance, as well as short and long term disability coverage. Plaintiff apparently neither requested nor received a written copy of the benefits package; however, it is undisputed that the Bonar benefits package did in fact include both short and long term disability coverage.

Later that year Transac, Inc. ("Transac") sought to acquire Bonar; a meeting was held between November and December in anticipation of this acquisition. Bonar employees were assured that their employment would be subject to the same terms and conditions once Transac took over the operation. In December of 1987, Transac acquired Bonar and took over operations at the Macon facility.[1]

On January 22, 1988, plaintiff suffered a heart attack and as a result became disabled from the performance of his job. Transac had not yet produced its written summary or description of the employee benefit plan for the Macon facility. Despite plaintiff's initial hopes of returning to his previous position, he candidly advised Transac's facility vice-president and general manager, Bruce Cuthbertson ("Cuthbertson"), that the effects of the heart attack would make it impossible for plaintiff to return to Transac; plaintiff's condition would require long term disability compensation.

In a letter dated April 4, 1988, Cuthbertson advised plaintiff that due to what Cuthbertson would later term an oversight the benefits package obtained and implemented by Transac included a short-term disability policy, but did not extend coverage for long-term disability. That Transac's failure to obtain such coverage was an oversight is borne out clearly by the fact that upon discovery of this oversight Transac sought and obtained long-term disability for its remaining employees. Transac paid plaintiff what Cuthbertson called a lump sum "short term disability" payment of twelve days wages and an additional payment equal to approximately one-half of plaintiff's normal salary for fifteen weeks. After being informed that Transac would not pay any additional benefits, plaintiff was terminated.

### DISCUSSION

Plaintiff filed this lawsuit on July 5, 1989, alleging violations of ERISA, 29 U.S.C. §§ 1104(a), 1105(a), and 1024(b). These claims stem from Transac's alleged failure to pay long-term disability benefits which were included in Bonar's employee benefit plan and which Transac representatives allegedly promised would be included in the plan after Transac acquired Bonar. Subsequent to that filing, plaintiff filed a separate complaint in the Superior Court of Bibb County, Georgia, alleging that because of promises made by Transac representatives Transac was estopped under Georgia law from asserting that no long-term benefits package was, at the time of plaintiff's heart attack, available to Transac employees. On Transac's motion, and without objection by plaintiff, these additional claims were removed to federal court and consolidated with the earlier filed ERISA claims.

*Transac's Motion to Dismiss Plaintiff's State Claims and Motion to Strike Plaintiff's Demand for a Jury Trial.*

■ The court first addresses Transac's motion to dismiss plaintiff's state law

---

1. Plaintiff points out that there was some evidence to suggest that Transac took over operations as early as November 18, 1987. Even if this were the effective date of sale, this date is not material to the court's determination today. There is no dispute that Transac owned the facility on the date of plaintiff's heart attack, January 22, 1988.

claims and plaintiff's motion to stay filed in response. With regard to the state law estoppel claims which Transac seeks to dismiss, plaintiff alleges that Transac, because of the promises made by Transac representatives to plaintiff, is estopped from asserting a lack of coverage for long term disability claims. Transac on the other hand asserts an ostensibly simple argument that plaintiff's state law claims are preempted by ERISA. Transac, however, is less than consistent in its arguments.

■ While preemption may indeed lead to situations in which a previously available state remedy is extinguished without its being replaced by a federal remedy, federal legislation is not always so malleable that defendants may use it as a shield against federal claims and at the same time as a sword against any state law claims which a plaintiff might assert. Preemption is based upon policies that **because** Congress has passed laws which **are applicable** to a particular area, state remedies in the area are superseded.

The court notes with interest that one of the bases of Transac's motion for summary judgment, treated *infra*, is that plaintiff's claims are not actionable under ERISA because Transac carried no ERISA-type employee benefit package. By arguing that ERISA is **inapplicable**, Transac in effect argues against the dismissal of the state claims. Transac mistakenly labels an argument against recovery as a position that ERISA does not apply. Fortunately for Transac, its arguments that ERISA is inapplicable are without merit; ironically, Transac's failure to accurately interpret the applicability of ERISA has salvaged its motion to dismiss plaintiff's state law claims.

Section 514(a) of ERISA, 29 U.S.C. § 1144(a) provides:

[this section] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court read the above provision to reflect the intent of Congress to eliminate all possible conflict with state law principles and to style the field of employee benefit plans one exclusively federal in character. *See Phillips v. Amoco Oil Co.*, 614 F.Supp. 694 (N.D.Ala.1985) ("*Phillips I*"), aff'd, 799 F.2d 1464 (11th Cir.1986) ("*Phillips II*"), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987), (citing *Shaw*, 463 U.S. at 99–100, 105, 103 S.Ct. at 2901–02, 2904). Justice Blackmun noted a report issued by Congressional committees specifically identifying a need for national uniformity so great as to merit preclusion of state regulation. *Shaw*, 463 U.S. at 99–100, n. 20, 103 S.Ct. at 2901–02, n. 20 (quoting H.R.Rep. No. 94–1785, p. 47 (1977)). The Court concluded that ERISA preempts not only state laws dealing with subjects **directly** covered by ERISA, but also any state laws which "relate" either **directly** or **indirectly** to an employee benefit plan. *Id.*, 463 U.S. at 98–100, 103 S.Ct. at 2901–03 (emphasis added).

■ In *Phillips II*, the Eleventh Circuit addressed protests, implicit in plaintiff's arguments in the case *sub judice*, that recognizing preemption in a specific area left unaddressed by federal law creates a "gap" in the law. In response to these arguments the *Phillips II* court stated:

[This] is exactly the result that obtains when Congress determines that federal law should govern a broad area to the exclusion of state regulation and chooses not to prohibit actions formerly prohibited by state law. **It is the very conflict between the federal scheme and state law that is to be avoided through preemption.** *Phillips II*, 799 F.2d at 1470 (emphasis added).

Thus, the mere fact that federal legislation arguably leaves unredressed a harm specifically covered by state regulation does not by itself revive a previously enforceable state remedy.

■ In the case *sub judice*, plaintiff's removed claims seek to impose liability upon Transac by invoking the state common law doctrine of estoppel. However, stated plainly, ERISA preempts **all state common law doctrines.** *Whitaker v. Texaco*, 729 F.Supp. 845, 852 (N.D.Ga.1989) (emphasis added) (citing *Nachwalter v.*

*Christie,* 805 F.2d 956, 959 (11th Cir.1986)); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Phillips II,* 799 F.2d at 1470.

Plaintiff's arguments in favor of his motion to stay Transac's motion to dismiss plaintiff's state law claims fly in the face of clearly established principles mandating preemption in this case. Transac's motion to dismiss plaintiff's state law claims is hereby GRANTED.

■ Having dismissed the state law claims, all that remain are plaintiff's ERISA claims. As ERISA claims are equitable in nature, there is no right to a jury trial in ERISA cases. *Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980).[2] Defendant's motion to strike plaintiff's jury demand is, therefore, GRANTED. Plaintiff's motion to stay is hereby DENIED.

*Transac's Motion for Summary Judgment*

■ The court now addresses counsels' arguments with regard to Transac's motion for summary judgment. The court again notes Transac's ill-fated argument that ERISA is inapplicable in the present case. Transac argues that in enacting ERISA, Congress intended that each particular benefit should be treated and analyzed as the product of a different individual benefit plan. Transac bases this argument principally upon the following ERISA provision:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which ... was established or is maintained for the purpose of providing its participants or their beneficiaries ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, etc., ... ERISA § 3; 29 U.S.C. § 1002(1).

Transac argues that Congress' decision to use conjunctive "or" evidences the intent that the term "employee welfare benefit plan" should be applied to each separate benefit offered by an employer. The result, it is argued, is that the Transac benefit package, which according to Cuthbertson extended benefits for short term disability but did not include long term disability benefits, does not fall under ERISA's definition of a "plan" subject to ERISA enforcement.

Transac, without the benefit of case law or legislative history, offers an interesting, if unacceptable, interpretation of the ERISA law.[3] Such an interpretation would effectively require minute analysis of each benefit offered under an employee welfare plan before a court could even hear an ERISA dispute. This court finds no merit in this argument. Transac does, nonetheless, assert separately argued grounds for summary judgment worthy of further analysis.

Transac argues that the actual package, implemented after Bonar's Macon facility came under Transac's management, controls with regard to available coverage. Because that package did not by its terms include long-term disability benefits, Transac argues, plaintiff cannot be heard to argue that such benefits should be made available to him.

Plaintiff asserts arguments based upon what he characterizes as justifiable reliance upon representations made by Cuthbertson and others that Transac benefits would mirror those offered by Bonar: estoppel arguments.[4] Despite the fact that the Transac package as drafted did not include long term disability coverage, plaintiff argues that upon direct inquiry as to the benefit coverage to be provided by Transac, plaintiff was told that his benefits would remain the same. That is, they

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** *See* generally "ERISA: Enforcing Oral Promises to Pay Employee Benefits." 28 *Boston Col-* *lege Law Review* 723, 724–725 (July 1987) (neither article nor ERISA legislative history and precedent suggest that each type of benefit amounts to a separate welfare plan).

**4.** It is unclear upon the present record exactly what representations were made to plaintiff and by whom.

would include long term disability coverage just as they had with Bonar. Plaintiff argues that it would be inconsistent with the purposes of ERISA to allow Transac to escape liability for coverage they had always intended to obtain and which they assured plaintiff was already available.

Indeed, there is something inequitable in Transac's position. But for the failure of those at Transac responsible for obtaining employee benefits, plaintiff would have enjoyed long-term disability coverage. Were plaintiff to suffer a heart attack today, the Macon facility plan would provide long-term disability benefits. Transac, in effect, raises the arguable incompetence of its own benefits administrator as a shield against liability.

Plaintiff rightly identifies the purpose of ERISA: to protect employees who rely upon promises of employers to provide welfare or pension benefits. 29 U.S.C. § 1001(a); S.Rep. No. 127, 93d Cong., 1st Sess. 1 (1973), U.S.Code Cong. & Admin. News 1974, p. 4639. Plaintiff points out that Transac's representative failed to obtain the promised benefits only through an oversight. Enforcement of the promises made by Transac, he argues, will simply further the goals of ERISA. This is especially so when one considers the fact that no written description of Transac's welfare benefit plan was made available to plaintiff, or for that matter even on file at the time plaintiff suffered the heart attack.

Transac, however, argues that any such promises were oral promises, and as such are not subject to enforcement under prevailing Eleventh Circuit law. Transac is only in part correct. The Eleventh Circuit has not painted in strokes so broad as Transac pictures them. In fact, the Eleventh Circuit has specifically stated that ERISA does not require a formal writing for the **establishment** of a plan. *Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir.1982) (emphasis added).

■ The *Donovan* court pointed out that the writing requirements of ERISA are simply the responsibilities of plan administrators, not a prerequisite for coverage. The court stressed:

[I]t would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans ... to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting standards. *Id.*

Clearly, an ERISA plan and coverage may emerge where no writing is present.

The Eleventh Circuit has ruled that a written ERISA plan cannot, however, be amended orally. *Nachwalter*, 805 F.2d at 960. The court emphasized that this ruling was buttressed by the observation that Congress expressly prohibited informal written amendments of ERISA plans. *Id.* Just as an employer may not justify limitations on coverage by their consistency with practice when the practice is inconsistent with the written terms of plan concerning the practice, *Brown v. Blue Cross & Blue Shield of Alabama*, 898 F.2d 1556, 1571 n. 17 (11th Cir.1990), no employee may be heard to assert that an employer's oral representations work to amend or modify a plan. *Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir.1990).

In *Kane*, the court agreed with the district court's ruling that all state common law doctrines are preempted by ERISA. *Id.* However, the court went on to point out:

"Federal courts possess the authority to develop a body of federal common law to govern issues in ERISA actions not covered by the act itself. *Id. citing Pilot*, 481 U.S. at 56, 107 S.Ct. at 1557.

Under this authority, the Eleventh Circuit reversed the district court's granting of summary judgment and held that while the federal common law of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of employee plans governed by ERISA, oral **interpretations** of benefit plans made by the employer may be enforced under the doctrine of equitable estoppel. *Kane*, 893 F.2d at 1285 n. 3 (emphasis the court's).

The court emphasized that such interpretations may be justifiably relied upon in the case of ambiguities in the plan itself. The

court distinguished those situations where the Eleventh Circuit gave no effect to oral representations because the terms of the preexisting written plan controlled. *Id.*, at 1285–86.

The *Kane* and *Nachwalter* decisions are consistent with the policies reflected in ERISA and the relevant Labor Department Regulations. ERISA requires the administrator of an employee benefit plan to file with the Secretary of Labor and to make available to employees a written plan description, a written summary plan description, and a written description of material modifications of coverage. ERISA 29 U.S.C. § 1024. The relevant Labor Department Regulations emphasize that the purpose of these descriptions is to ensure that beneficiaries have at their disposal clearly drafted, understandable welfare plans. *See e.g.*, 29 CFR § 2520.102–2(b) (7–1–90 Edition) ("The format of the summary plan description must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries"); employers must even accommodate language variations where relevant. See 29 CFR §§ 2520.102–3(t)(2), 2520.104b–1(b)(3) (7–1–90 Edition) (require employers to make benefit plan information available, free of charge, at multiple locations).

One can easily understand why *Nachwalter* and other decisions evidence a distaste for arguments that an employee has relied upon oral representations when, by law, an employer must afford employees easy access to written plan summaries drafted with sensitivity to the level of sophistication of employees who must be able to discern what coverage they have (ERISA's original intent) and who, perhaps more importantly, will be bound by the terms of these plan descriptions and summaries.

■ Neither plaintiff nor Transac argue that there was any ambiguity as to the Transac employee benefit package as drafted in the case *sub judice.* As such, there would appear to be no ambiguities subject to resolution through any oral representations made by Transac representatives. While the court is sympathetic to the plaintiff's confusion traceable to the representa-

tions made Transac representatives, the law provides no remedy to one seeking to extend or modify existing coverage through oral representations. This is consistent with ERISA's goal that those who participate in plans shall receive the benefits to which they are entitled, *see e.g., Arnold v. Life Ins. Co. of North America,* 894 F.2d 1566, 1570 (11th Cir.1990), *citing Helms v. Monsanto Co.,* 728 F.2d 1416, 1420 (11th Cir.1984), but not to the extent of imposing duties beyond those established by the plan itself.

The court is also sensitive to the unique facts present in this case and to the fact that at the time of plaintiff's heart attack Transac had not yet produced a plan description or plan summary. The court does not assign fault in Transac's failure to have made such a filing by that date. ERISA provides only that an employer must file such descriptions and summaries within 120 days after the plan becomes subject to ERISA's reporting requirements. ERISA 29 U.S.C. § 1024(a)(1)(B). Absence of fault is not, however, dispositive of this matter.

Transac correctly cites case law which stands for the proposition that oral representations cannot work to amend an employer's ERISA plan. But upon the facts before the court there exists a question as to whether plaintiff seeks to invoke estoppel to **amend** Transac's plan, or simply to **establish** the plan actually in force at the time of plaintiff's heart attack (emphasis added). Consistent with the directives of the Labor Department Regulations, this court, too, looks to the simple unembellished meaning of the terms employed by the Eleventh Circuit in this context.

The very terms "amendment" and "modification" suggest two things to the court. The term "amendment" suggests an alteration, often in writing, by due formal procedure, while "modification" suggests a change in something already clearly established. The facts in the case *sub judice* do not bring to mind the plain meaning of these terms. Looking to the information available to the plaintiff at the time of his heart attack, the court does not hear in plaintiff's argument an attempt to

"amend" or "modify" Transac's plan as it existed at the time of plaintiff's heart attack. Rather, plaintiff seeks to estop Transac from asserting the terms of a writing, if indeed one even exists, composed some time after the events giving rise to this law suit. To allow Transac to do so, plaintiff argues, would be inconsistent with policies at the very heart of ERISA and the relevant Labor Department Regulations.

Unlike the cases cited by Transac in support of their summary judgment motion, plaintiff in the case *sub judice* did not enjoy the luxury of having a written description of his employer's benefit plan upon which to rely. Thus, any oral representations made to plaintiff were not at odds with a written description of the Transac plan; the plan was not yet written. So unclear was the coverage under the plan, that even those in positions familiar with the benefits offered by Transac were ignorant of the plan's absence of long-term disability coverage. Any oral representations made were to the plaintiff the actual and only "plan" in operation at the time of his heart attack.

This court finds that there indeed remains a factual dispute as to the content and tenor of the oral representations made to plaintiff by Transac representatives. Certainly, under the right circumstances, plaintiff could have relied upon representations that Transac's benefit plan mirrored that offered by Bonar. Because Transac had not yet provided a written description of the employee welfare plan, such oral representations would not amount to a modification of or amendment to a written plan. The representations themselves could actually constitute a "plan": the only "plan" then in operation at Transac's Macon, Georgia facility.

This result is consistent with the equitable principles underlying ERISA. While an employer may rely upon a written plan to protect itself from oral modifications and amendments, its agents may not, before producing a written plan, make false representations to employees with regard to coverage, and only after a claim is filed or relevant event occurs rely upon a later-composed, conveniently inconsistent version of the "plan" to deny benefits to employees.

Plaintiff, therefore, may enjoy the protection of the federal common law doctrine of equitable estoppel. Plaintiff relied upon the alleged representations made by Transac's agents, not to modify coverage, but as the only available explanation of coverage at the time of his heart attack. While the court is mindful that no single act in itself necessarily constitutes the establishment of a plan, *Donovan*, 688 F.2d at 1373, the representations in the case *sub judice* may under the circumstances have amounted to a "plan" for purposes of ERISA analysis.

This court finds that there exist disputed material facts as to the substance of alleged representations made to plaintiff and other employees as to benefits available to Transac employees. Accordingly, defendant Transac's motion for summary judgment is hereby DENIED.

SO ORDERED.