Joseph MOELLER, Plaintiff

v.

Bernard BERTRANG, Defendant.

Civ. No. 90–1045.

United States District Court,
D. South Dakota, N.D.

Aug. 24, 1992.

**292**

Thomas F. Martin, McCann, Martin & McCann, P.C., Brookings, S.D., for plaintiff.

Vincent A. Foley, Foley Law Office, Watertown, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Senior District Judge.

This case came on for trial to the Court. Upon the evidence received at trial, and on the law briefs filed, this memorandum is filed as the findings of fact and conclusions of law of the Court.

### I. Facts

Defendant operates an auto repair business in Watertown, South Dakota under the name, Bernie's Body Shop. In 1965, at age 21 years, plaintiff began employment at the Body Shop. His employment continued almost twenty-five years.

Conditions of employment established by defendant at his business were: (1) an employee who worked for defendant at least five consecutive years would receive a lump sum upon retirement at age 62 years; (2) when an employee reached the fifth year of employment, defendant would credit the employee with $5,000 for the first five years and $1,000 per year for each year of employment thereafter, until the employee reached age 62.

To date, one employee, Carl Matteson, has received a payment pursuant to the conditions of employment. Matteson worked for defendant for eleven years until his retirement, upon which defendant paid him $11,000. Several other employees, including defendant's son, have worked at defendant's business over the years and have left for a variety of reasons. None of these employees has received a payment pursuant to defendant's conditions of employment.

The conditions of employment were not reduced to writing and do not appear in any other agreement. Defendant did not keep written records of the agreement nor did he make annual reports concerning retirement benefits paid. No part of the paychecks of any employee were withheld as a contribution to the retirement plan.

Defendant contends that the promise to pay retirement benefits was based on two conditions. First, the employee had to abstain from "moonlighting," that is, working for pay at a location other than Bernie's Body Shop in a capacity that is substantially similar to that of the employee at Bernie's Body Shop.

Defendant contends another condition of receiving retirement benefits was that an employee could not quit the term of employment with defendant before the retirement age of 62 years. According to defendant, if an employee left Bernie's Body Shop before such time, the employee forfeited all rights to the lump sum payment. There is no evidence that a person who quit employment before the retirement age of

62 years received payments pursuant to defendant's plan.

Defendant cancelled the plan after plaintiff left his employment. Defendant said at trial that he did so because he found out "everybody was moonlighting."

That defendant made a promise to his employees to pay retirement benefits is not contested. Instead, the essential dispute is whether plaintiff's promise is enforceable under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1401. In contesting the applicability of ERISA to this case, defendant argues that under all of the surrounding facts, defendant's retirement scheme is not an ERISA plan.

## II. Discussion

### A. The ERISA Claim

#### 1. "Plan, fund, or program"

ERISA was enacted to "protect working men and women from abuses in the administration and investment of private retirement plans and employee welfare plans." *Donovan v. Dillingham,* 688 F.2d 1367, 1370 (11th Cir.1982). In enacting ERISA, Congress was primarily concerned with:

assuring employees that they would not be deprived of their reasonably-anticipated pension benefits; an employer was to be prevented from 'pulling the rug out from under' promised retirement benefits upon which his employees had relied during their long years of service. There was public concern 'that despite the enormous growth [in employee benefit plans] many employees with long years of employment [were] losing anticipated retirement benefits owing to the lack of vesting provisions in such plans.'

*Amato v. Western Union Int'l Inc.,* 773 F.2d 1402, 1409 (2d Cir.1985), *cert. dismissed,* 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). While the decision to adopt a plan rests with the employer, once the decision is made to establish a plan, an employee is entitled to any vested benefits that arise under the plan. *Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.

1991). In order to determine whether plaintiff is entitled to recover retirement benefits from defendant, the question is whether defendant established or maintained an ERISA plan.

There are two types of plans under ERISA, "employer welfare benefit plans" and "employee pension benefit plans." 29 U.S.C. §§ 1002(1), 1002(2)(A). At issue here is the employee pension benefit plan which is defined in 29 U.S.C. § 1002(2)(A) as:

[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

Thus, in order to invoke ERISA, a "plan, fund, or program" must be "established or maintained" by an employer. *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991).

Courts have set out the prerequisites for a finding that an employer "established or maintained" a plan for purposes of ERISA. It is clear that more is required than merely an employer's decision to provide an employee pension benefits. *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). "[I]t is the reality of a plan, fund or program and not the decision to extend certain benefits that is determinative." *Donovan,* 688 F.2d at 1373. In discussing the point at which a plan, whether in writing or not, becomes a reality, the *Donovan* court stated:

[A] court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended

benefits, beneficiaries, source of financing, and procedures for receiving benefits. Some essentials of a plan, fund or program can be adopted, explicitly or implicitly, from sources outside the plan, fund, or program ... but no single act in itself necessarily constitutes the establishment of the plan, fund, or program. *Id.; see also Hansen v. Continental Ins. Co.,* 940 F.2d 971, 977 (5th Cir.1991).

The circumstances surrounding defendant's retirement plan are such that a reasonable person could ascertain the intended benefits and beneficiaries. Defendant's plan unambiguously provided each employee $1,000 for each year of employment for defendant until retirement. *See Williams v. Wright,* 927 F.2d at 1543 n. 7. Moreover, each employee who worked for defendant was intended to be a member of the class of beneficiaries at least to the extent that the employee worked for defendant for five years and thereby reached the vesting period.[1] Section 29 U.S.C. § 1053 requires pension plans to provide an employee who has completed at least five years of service with a nonforfeitable right to all of the employee's accrued benefit. *See* 29 U.S.C. § 1053; *Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1297 (6th Cir. 1991). That defendant's retirement plan substantially mirrored the vesting requirements of 29 U.S.C. § 1053 is additional evidence that an ERISA plan was in existence.

■ Although less clear, defendant's source of financing is ascertainable. Defendant did not make contributions to any trust in order to insure adequate funding for the employees' retirement benefits. It appears the source of financing for the retirement plan was the general assets of Bernie's Body Shop. "Although, with some exceptions, it is true that the assets of employee benefit plans are required to be held in trust, ... it is equally true that an employer's failure to meet an ERISA

requirement does not exempt the plan from ERISA coverage. (citation omitted). '[A]n employer ... should not be able to evade the requirements of the statute merely by paying ... benefits out of general assets.' " *Williams v. Wright,* 927 F.2d at 1544 (quoting *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 18, 107 S.Ct. 2211, 2221, 96 L.Ed.2d 1 (1987)). Defendant's refusal to maintain separate funding for the retirement benefits, therefore, cannot defeat the existence of an ERISA plan. *Wright,* 927 F.2d at 1544.

■ Finally, with respect to the plan's procedures, defendant admitted at trial that an employee who worked for defendant for five years would receive credit in the amount of $1,000 for each of the first five years of employment. After working for defendant for five years, the employee would receive $1,000 for each year employed by defendant until the retirement age of 62 years. Defendant promised to pay to the employee a lump-sum in the amount of the employee's accrued retirement benefit when the employee reached the retirement age of 62 years. Although defendant's retirement scheme was simple, such simplicity does not preclude the existence of a plan under ERISA. The procedures under the scheme are sufficiently ascertainable to establish an ERISA plan. *See Wright,* 927 F.2d at 1544.

■ In protesting the existence of an ERISA plan, defendant argues that a naked promise cannot constitute a pension plan covered by ERISA. The mere fact that an agreement is oral, however, does not necessarily prevent the agreement from becoming an ERISA plan. Courts have consistently held that ERISA does not require a formal, written plan. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985); *Donovan v. Dillingham,* 688 F.2d 1367, 1372 (11th Cir.1982); *Lipscomb v. Transac, Inc.,* 749 F.Supp. 1128, 1133 (M.D.Ga.1990).[2] The writing requirement

---

**1.** The Eleventh Circuit in *Williams v. Wright* has held that a plan covering a single employee is covered by ERISA where all other requirements are met. 927 F.2d at 1545. Even if this Court were to find that a class of beneficiaries was

nonexistent, according to *Wright,* plaintiff by himself could be an intended beneficiary under defendant's retirement plan.

**2.** In *Scott v. Gulf Oil Co.,* plaintiff's ERISA claim was based primarily on oral representations.

becomes important only when it is determined that ERISA covers a plan, because it is this point in time that plan administrators and fiduciaries are charged with various fiduciary and reporting responsibilities. *Dillingham*, 688 F.2d at 1372. However, "it would be incongruous for persons establishing or maintaining informal or unwritten employee benefit plans, or assuming the responsibility of safeguarding plan assets, to circumvent the Act merely because an administrator or other fiduciary failed to satisfy reporting or fiduciary standards." *Id.* Where, as here, an employee relies on representations made by an employer regarding retirement benefits, the absence of a writing is insignificant.

> This result is consistent with the equitable principles underlying ERISA. While an employer may rely upon a written plan to protect itself from oral modifications and amendments, its agents may not, before producing a written plan, make false representations to employees with regard to coverage, and only after a claim is filed or relevant event occurs rely upon a later-composed, conveniently inconsistent version of the "plan" to deny benefits to employees.

*Lipscomb v. Transac, Inc.*, 749 F.Supp. 1128, 1135 (M.D.Ga.1990). Similarly, in *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991), the court, despite the absence of a writing, upheld the district court's decision allowing plaintiffs to recover retirement benefits because plaintiffs relied on the employer's representations that such benefits would be forthcoming. *Id.* at 1298–1300. Defendant here cannot avail himself of the fact that he has failed to comply with the writing requirement under ERISA.

■ In arguing that his oral promise did not constitute a plan covered by ERISA, defendant argues this case is controlled by

*Harris v. Arkansas Book Co.*, 794 F.2d 358 (8th Cir.1986). Harris' employment as warehouse manager with defendant's book depository was terminated. Harris was told by defendant's supervisors over the years that he "could expect to be employed by [defendant] ABC until the age of seventy, and that he could expect a substantial pension upon retiring." *Id.* at 359. Harris' request for his pension benefits was rejected by the defendant. Another ABC employee, Earl Kruse, had received monthly payments from ABC after Kruse retired. The payments to Kruse were discontinued, however, when Harris requested his pension.

In determining whether the promise to Harris constituted a plan covered by ERISA, the *Harris* court borrowed from the precept of *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), that a court must consider the surrounding circumstances in determining the existence of an ERISA plan. *Harris*, 794 F.2d at 360. In *Harris*, Kruse testified the retirement payments he received from ABC came as a surprise and that he was never told the company maintained a pension program. Kruse was told the payments were a gift to Kruse for staying with the company. The Eighth Circuit held the payments to Kruse and the promise to Harris were insufficient to constitute a plan under ERISA. *Id.* at 360–61.

Although relevant to the analysis of this case, the *Harris* case is factually distinguishable. Plaintiff's claim is based on more than a mere oral promise. Defendant's payment to Carl Matteson provides independent and reliable proof of the existence of defendant's retirement plan. There is no indication in the record the payment to Carl Matteson was gratuitous. The more reasonable conclusion is that the payments were made to Matteson obligato-

---

754 F.2d at 1503 n. 1. The court found that the oral representations, if true, would support a finding that the plan was covered by ERISA. A reasonable person, the court held, could "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Id.* at 1504. This Court's conclusion that a reasonable person could ascertain the same

findings in defendant's oral promise is supported by *Scott.*

In addition, in *Lipscomb v. Transac, Inc.*, the court found certain oral representations defendant made to plaintiff concerning long term disability could by themselves constitute a plan under ERISA where the plaintiff relied upon the representations. 749 F.Supp. at 1135.

rily. Unlike the gift to Kruse in *Harris*, the $11,000 lump-sum payment to Matteson conformed exactly to the formula outlined in defendant's retirement scheme and could not have come to Matteson as a surprise. *Harris* can be further distinguished because the promise made by ABC's supervisors to Harris that Harris could "expect a substantial pension upon retiring" was much more abstract and general than the promises made to Bernie's Body Shop employees and specifically to plaintiff. Plaintiff here was not only told he would receive a pension upon retirement, plaintiff was told the precise amount the pension would annually accrue. In addition, defendant told his employees that his retirement plan compared favorably to that of his nearby competitor. While "no single act in itself necessarily constitutes the establishment of the plan, fund, or program," *Dillingham*, 688 F.2d at 1373, the nongratuitous payment to Matteson, in conjunction with the highly specific promises defendant made to plaintiff, is sufficient to constitute a plan under ERISA.

■ Defendant at trial did not deny the existence of the promise to pay retirement benefits. Rather, defendant claimed plaintiff violated the conditions of the promise by moonlighting and quitting employment under defendant.

The Court finds the two conditions do not prevent plaintiff from recovering under ERISA. Defendant never made the charge that plaintiff was moonlighting until after plaintiff left employment at the Body Shop. Defendant cannot validly claim at this late date that alleged moonlighting by plaintiff prevents him from recovering under the plan.

Defendant's argument that plaintiff is not entitled to recovery because he quit is similarly without merit. Plaintiff's decision to leave his job was precipitated by defendant's actions which were designed to force plaintiff out. Not only did Defendant ask plaintiff for his key to the Body Shop, defendant humiliated plaintiff in the presence of other employees by insulting him with an off-color remark and calling him disparaging names. Plaintiff responded by stating "Bernie, if you feel this way ... [i]n two weeks I'll be retiring." The record presents no reason to believe plaintiff chose to leave or that he would have left but for defendant's improper conduct.

More important, plaintiff's right to the accrued benefits vested after the fifth year of employment with defendant. Defendant's plan, which he himself designed, provided that after five years of employment, an employee's retirement benefit would be credited $1,000 for each of the five years. This arrangement, known as "cliff-vesting", *see* 29 U.S.C. § 1053(a)(2)(A); *Blessitt v. Retirement Plan for Employees of Dixie Engine Co.*, 848 F.2d 1164, 1177 (11th Cir.1988), provided plaintiff with a nonforfeitable right to retirement benefits when he reached the age of 62 years. This right is not affected on this record by the fact that plaintiff left defendant's employment before reaching the age of 62 years. Such a finding is consistent with the overriding policies of ERISA.

> Unless an employee's rights to his accrued pension benefits are nonforfeitable, he has no assurance that he will ultimately receive a pension. Thus, pension rights which have slowly been stockpiled over many years may suddenly be lost if the employee leaves or loses his job prior to retirement. Quite apart from the resulting hardships, ... such losses of pension rights are inequitable, since the pension contributions previously made on behalf of the employee may have been made in lieu of additional compensation or some other benefit which he would have received.

*Hoover v. Cumberland, Md. Area Teamsters Pen. Fund*, 756 F.2d 977, 985 (3rd Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985) (quoting S.Rep. No. 383, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News pp. 4890, 4930).

### 2. Damages under ERISA

■ Defendant's plan promised a lump-sum retirement benefit in the amount of $1,000 per year of employment subject to the five year vesting requirement. Plain-

tiff was duly employed by defendant for 24 years. Plaintiff is entitled to the accrued amount of his fully vested benefits. 29 U.S.C. § 1002(23).

For purposes of a defined benefit plan, an employee's "accrued benefit" that "is to be determined as an amount other than an annual benefit commencing at normal retirement age, or ... other than an annual benefit in the form of a single life annuity," is the "actuarial equivalent" of the employer's contributions in excess of the contributions made by the employee.[3] 29 U.S.C. § 1054(c)(1), (3). Here, Defendant's contributions equal $24,000, calculated by multiplying $1,000 per year for each of Plaintiff's 24 years of employment. Plaintiff, as Defendant contends, however, is not entitled to the full $24,000 lump-sum payment. The plan provided that plaintiff would not receive his retirement benefit until he reached retirement age. "The value of the lump sum or other alternative form of distribution is the present value of the normal form of benefit provided by the plan payable at normal retirement age, determined as of the date of distribution using reasonable actuarial assumptions as to interest and mortality." 29 C.F.R. § 2619.-26(a)(1).[4] Thus, Plaintiff is entitled to the present value of $24,000 in the year of Plaintiff's normal retirement age under the plan, determined as of April 24, 1990, the date Plaintiff left Defendant's employment and was entitled to the present value of his future retirement benefits.[5] *Cf. Hollingshead v. Burford Equip. Co.,* 747 F.Supp. 1421, 1443 (M.D.Ala.1990).

In determining the interest rate in calculating the present value of a dollar amount in the future, "it is well-settled that ERISA grants the court wide discretion in fashioning equitable relief to protect the rights of pension fund beneficiaries." *Katsaros v. Cody,* 744 F.2d 270 (2nd Cir.) (applying interest rate in calculating prejudgment interest), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). This Court finds the three-month or 90 day Treasury Bill rate as of the date of plaintiff's cessation of employment, April 24, 1990, to be the reasonable and appropriate interest rate to apply in calculating present value.[6] *Cf. McLaughlin v. Cohen,* 686 F.Supp. 454, 458 (S.D.N.Y.1988) ("In exercising this discretion, courts have relied on the Treasury rate [adjusted prime interest rate set by Secretary of Treasury] as a fair measure of the cost of money over the relevant time period."). The T-bill rate effective on April 24, 1990 was 7.78%. Therefore, plaintiff is entitled to the present value of $24,000 received in the year plaintiff will reach the age of 62 years, the normal retirement age under the plan, discounted at the rate of 7.78%.

Plaintiff is additionally entitled to prejudgment interest for the ERISA claim. *Dependahl v. Falstaff Brewing Corp.,* 653 F.2d 1208, 1219 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981); *Jansen v. Greyhound Corp.,* 692 F.Supp. 1029, 1044 (N.D.Iowa 1987). While federal law governs the issue of prejudgment interest, the Court must refer to state

---

**3.** Plaintiff has not made and was not required to make contributions under the plan.

**4.** Defendant argues that the "actuarial equivalent" of 29 U.S.C. § 1054(c)(3) requires more than the mere calculation of present value. Rather, according to Defendant, actuarial equivalent entails figuring actuarial risks. This argument might be forceful in the context where such intangibles as a plan participant's actuarial likelihood of death become relevant, since assumptions of mortality would act to decrease the benefit amount. Here, however, Plaintiff is claiming entitlement only to the present value amount that has already accrued. *See* Pl.'s Am. Br. at 10; *see also* 29 U.S.C. § 1053. Intangibles such as risk of death are irrelevant in this scenario.

**5.** "Normal retirement age" is defined as "the earlier of

    (A) the time a plan participant attains the normal retirement age under the plan, or
    (B) the later of—
    (i) the time a plan participant attains age 65, or
    (ii) the 5th anniversary of the time a plan participant commenced participation in the plan."
29 U.S.C. § 1002(24)(A), (B).

**6.** The interest rate for determining lump sum amounts prior to date of termination may be set by the plan. *See* 29 C.F.R. § 2619.26(b)(2)(i).

law for the determination of the proper rate. *Dependahl,* 653 F.2d at 1219. For any suit commenced on or after July 1, 1990, South Dakota law requires a rate of 12% in calculating prejudgment interest. S.D. Codified Laws Ann. § 21–1–13.1.–.2. (1991); S.D. Codified Laws Ann. § 54–3–16 (1990).

The Court recognizes that defendant's promise to pay retirement benefits to an employee was in the form of a lump sum payment made to the employee when the employee reached the age of 62 years. In accordance with this promise, plaintiff may elect to receive a lump sum amount of $24,000 when plaintiff reaches the age of 62 years in lieu of receiving the present value of that amount plus interest.

### B. State Law Contract Claim

■ ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). Having found defendant's plan is covered by ERISA, plaintiff's common law contract claim is preempted. *Harper v. R.H. Macy & Co., Inc.,* 920 F.2d 544 (8th Cir.1990); *Anderson v. John Morrell & Co.,* 830 F.2d 872, 875 (8th Cir.1987). The necessity for determining the issues pertaining to plaintiff's amended complaint concerning the oral contract is obviated, and consequently, so is defendant's motion for new trial based on plaintiff's amended complaint.

### III. Conclusion

The finding that defendant's retirement scheme is covered by ERISA is in accordance with the policies underlying ERISA. ERISA was designed to remedy the injustices that had occurred in contexts similar to the one here, "the abrupt loss of promised benefits to plan participants after years of employment." *Hollingshead v. Burford Equip. Co.,* 747 F.Supp. 1421, 1443 (M.D.Ala.1990). Defendant was not obligated to establish and maintain a retirement plan. However, the decision to do so includes the responsibility of complying with ERISA. Damages will accordingly be entered in favor of the plaintiff, together with interest at the rate of 12% from April 24, 1990, or, if plaintiff elects, defendant shall pay plaintiff $24,000 when plaintiff reaches the age of 62 years. Costs shall be hereafter determined by the Clerk.