Edmund H. BELANGER,
et al., Plaintiffs,

v.

WYMAN–GORDON COMPANY,
Defendant.

Civ. A. No. 93–40222–NMG.

United States District Court,
D. Massachusetts.

June 5, 1995.

Mark I. Zarrow, Zarrow, George, Lian & Abraham, Worcester, MA, for plaintiffs

John O. Mirick, Mirick, O'Connell, DeMallie & Lougee, Worcester, MA, for defendant.

### *MEMORANDUM OF DECISION*

GORTON, District Judge.

The plaintiffs, eighteen former employees of the defendant, Wyman–Gordon Company ("Wyman–Gordon" or "the Company"), bring this action against Wyman–Gordon alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and breach of contract. The plaintiffs assert that Wyman–Gordon's early retirement offers constituted a retirement "plan" under ERISA and, as such, should not have been altered unilaterally by the Company to the detriment of the employees and retirees. The plaintiffs further allege that Wyman–Gordon violated ERISA and breached a contract with its employees by amending its Survivor Income Plan.

This Court makes the following findings of fact based upon the evidence presented at the non-jury trial.

## I. FINDINGS OF FACT

### A. The Early Retirement Offer of January, 1991

To reduce operating costs and to encourage older employees to retire, Wyman–Gordon, a long-time Worcester employer, extended four early retirement offers to its employees between 1987 to 1991, the time

period relevant to this action. The two earlier proposals, submitted by Wyman–Gordon on December 31, 1987, and February 1, 1990, offered to all eligible employees opting to retire a bonus in the amount of one week's salary for every year of employment. There was no cap or other limitation on the amount of the bonus. The plaintiffs in this case either were ineligible or voluntarily chose not to accept those earlier offers.

On January 10, 1991, Wyman–Gordon extended a less lucrative retirement offer to its employees. The Company again offered all eligible employees who opted to accept early retirement a lump-sum payment in the amount of one week's salary for every year of employment by Wyman–Gordon. The offer of January 10, 1991, however, differed from the earlier offers by applying a cap of 25 weeks worth of salary to the retirement bonus. Thus, if an employee had worked 30 years, he was eligible to receive a retirement bonus equal to 25, but not 30, weeks of salary.

The employees eligible for early retirement under the January, 1991, offer were concerned about the proposed cap on their bonuses, and, individually, confronted the management of Wyman–Gordon about it. Wyman–Gordon supplied several somewhat vague responses.

Mr. James Coyne, the General Manager and Vice President of the Eastern Division of Wyman–Gordon, told one plaintiff, Francis Porcaro, that he could take the offer with the cap or just "leave it." Coyne told another plaintiff, Loren Bell, that the cap was necessary because the Company did not have enough money to pay retirement bonuses without a cap.

Mr. Les Duhamel, the supervisor of employee benefits at Wyman–Gordon, told several plaintiffs that the January 10, 1991, offer might be the Company's last offer of early retirement, but he was never definite in that regard. He also suggested that there could be lay-offs in the future. Possessing that information, the eighteen plaintiffs accepted the Company's January, 1991, offer of early retirement voluntarily and with full knowledge of the cap on the retirement bonus. Despite prior hints to the contrary, Wyman–

Gordon extended a fourth offer of early retirement in December, 1991. That offer did not contain a cap on the retirement bonus.

## B. The Survivor Income Plan

When the plaintiffs accepted the Company's offer of early retirement in January, 1991, they received, in addition to their retirement bonus and vested pension benefits, term life insurance coverage known as the Survivor Income Plan ("SIP"). Wyman–Gordon paid the insurance premiums under the SIP with the Company's own funds. Consequently, the SIP did not affect the status of the pension fund in any way.

Before accepting the January, 1991, offer of early retirement, most of the plaintiffs, including Mr. Porcaro, Mr. Harold Hoekstra, Mr. Peter Virbasius, Mr. Frank DiPilato and others, discussed the SIP with Mr. Duhamel. Mr. Duhamel described the SIP to the plaintiffs but never warned them that the Company could unilaterally modify it. On the other hand, he never told the plaintiffs that the SIP could not be modified. Moreover, in the summary plan description of the SIP, which was distributed to all employees, including the plaintiffs, the Company explicitly reserved the right to modify, amend, suspend or discontinue the SIP. *See* Exhibit 13. In any event, the existence of the SIP was a factor in the plaintiffs' decisions to accept the offers of retirement.

In December, 1992, Wyman–Gordon notified all of its retirees, including the eighteen plaintiffs, that it would terminate the SIP effective January 1, 1993. In February, 1993, the Company notified its retirees that it would augment the benefits under the existing pension plans by 7.5% per month to offset the elimination of the SIP. At that time, all employees and retirees were given the opportunity to change their pension payment option. The plaintiffs responded to the February, 1993, notice by choosing various methods of payment, but none of them protested or challenged the elimination of the SIP or the corresponding increase in pension benefits. The parties have stipulated that Wyman–Gordon followed its own internal

procedures for terminating the SIP and for modifying the pension benefits.

## II. LAW AND ANALYSIS

### A. The Early Retirement Offers

■ In Count 1 of their two-count complaint, the plaintiffs claim that Wyman–Gordon violated ERISA by placing a cap on the retirement bonus proposed in the January, 1991, offer of early retirement. For damages, the plaintiffs seek approximately $179,-000, which is the difference between the bonuses that they would have received had there been no cap and the bonuses that they actually received. This Court rejects the plaintiffs' argument because the Company's offers of early retirement did not implicate ERISA.

In *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court ruled that Congress drafted ERISA to address pension "plans" not employee "benefits." *Id.* at 8–9, 107 S.Ct. at 2216. The Court explained that a "plan" requires the creation and maintenance of an "ongoing administrative program for processing claims and paying benefits." *Id.* at 12–13, 107 S.Ct. at 2218. The Court in *Fort Halifax* held that a Maine statute requiring certain employers to pay severance benefits to its employees did not, therefore, implicate ERISA because a "one-time, lump-sum payment triggered by a single event" did not require an administrative scheme and thus was not an ERISA "plan." *Id.*

In the case at bar, Wyman–Gordon offered a retirement bonus to certain eligible employees. Similar to the severance benefits in the *Fort Halifax* case, Wyman–Gordon's retirement bonus was a one-time, lump-sum payment triggered by a single event, the early retirement of an eligible employee. The retirement offers did not require the creation of an administrative scheme or the need for ongoing financial coordination of the Company's assets.

Accordingly, this Court concludes that the Company's early retirement offers did not constitute an ERISA plan. *See Id.* ("[t]o do little more than write a check hardly constitutes the operation of a benefit plan"); *Angst*

*v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir.1992) (buyout plan providing a lump-sum payment for departing employees did not qualify as an ERISA plan). The Court finds, therefore, that the defendant's offer of retirement in January, 1991, did not violate, or even implicate, ERISA and that the defendant is thus entitled to judgment in its favor on Count 1.

### B. The Survivor Income Plan

In Count 2, the plaintiffs claim that the Company's unilateral termination of the SIP violated their rights under ERISA and breached Wyman–Gordon's contract with its retirees.

#### 1. ERISA

■ The Supreme Court's recent decision in *Curtiss–Wright Corp. v. Schoonejongen,* —— U.S. ——, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), directly addresses the issues raised by the plaintiffs with respect to the SIP. In *Curtiss–Wright,* the Court held that employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Id.* at ——, 115 S.Ct. at 1228. Because the SIP in this case provided certain benefits in the event of death, and because the costs of the SIP were paid out of the Company's general operating revenues, not out of the pension plan, the Court finds that the SIP was a "welfare plan." *See* 29 U.S.C.A. § 1002(1). Wyman–Gordon, therefore, had a right to modify the SIP so long as it provided a procedure for amending it and complied with that procedure. 29 U.S.C.A. § 1102(b)(3); *see Curtiss–Wright Corp.,* —— U.S. at ——, 115 S.Ct. at 1228.

■ The summary plan description of the SIP, which was distributed to all employees, including the plaintiffs, specifically stated that "the Company reserves the right to modify, amend, suspend or discontinue [the SIP] at any time." *See* Exhibit 13. That clause satisfies ERISA's requirements that the SIP provide a procedure, and identify the persons with authority, to amend the plan. 29 U.S.C.A. § 1102(b)(3); *Curtiss–Wright Corp.,* —— U.S. at ——, 115 S.Ct. at 1229 (clause in summary plan description stating

that the "Company reserves the right at any time to amend the plan" satisfies both requirements of § 1102(b)(3)). Furthermore, the parties have stipulated that the Company "followed all applicable procedures within Wyman–Gordon to terminate the Survivor Income Plan." Because Wyman–Gordon's amendment procedures were valid, and because the parties have stipulated that the Company complied with those procedures, the Court finds that the termination of the SIP in this case did not violate ERISA. *See Id.*

### 2. Breach of Contract

■ The plaintiffs further claim that Wyman–Gordon entered into a contract with the retirees promising that it would not alter the SIP. The plaintiffs argue that they relied on the Company's implicit guarantee, as communicated to them by Mr. Duhamel, to provide the SIP coverage when they accepted the offer of early retirement.

The summary description of the Plan reserved to the Company the right to modify, amend or suspend the SIP. Nothing Mr. Duhamel said or did mitigated that right. He may not have told the plaintiffs that the SIP could be terminated or modified, but he never asserted otherwise either. Consequently, this Court finds that the plaintiffs have failed to carry their burden of proving that Wyman–Gordon entered into a contract wherein it agreed not to amend or terminate the SIP.

In sum, the Court finds that Wyman–Gordon's decision to terminate the SIP did not violate ERISA nor did it breach a contract with the plaintiffs. The defendant, therefore, is entitled to judgment in its favor on Count 2.

### III. CONCLUSION

The Court is sympathetic to the plaintiffs, many of whom have worked for the same company for their entire adult lives. Such hard work and loyalty is certainly commendable. Nevertheless, the law offers the plaintiffs no remedy for their perceived injuries. They weighed the cost and benefit of the Company's early retirement offer of January, 1991, and made a calculated decision to ac-cept it. The plaintiffs took a gamble and cannot now withdraw the wager.

The offers of early retirement by Wyman–Gordon did not constitute a pension plan under ERISA, and, therefore, did not violate ERISA. Similarly, the Company's modification of the SIP did not violate ERISA or breach any contract with the plaintiffs. Accordingly, the defendant, Wyman–Gordon, is entitled to judgment on both Counts 1 and 2.

IT IS SO ORDERED.